NOT DESIGNATED FOR PUBLICATION

No. 127,976

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of DAVID G. DELIMONT.

MEMORANDUM OPINION

Appeal from Morris District Court; COURTNEY D. BOEHM, judge. Submitted without oral argument. Opinion filed April 11, 2025. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Dwight R. Carswell*, deputy solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., HILL and ARNOLD-BURGER, JJ.

PER CURIAM: David G. Delimont appeals the district court's decision denying his request for a transitional release hearing under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq. Delimont argues that the court erred in finding he failed to meet his burden to show probable cause that his mental abnormality or personality disorder had changed so much that it would be safe to place him on transitional release. After reviewing the record, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL HISTORY

In 1987, Delimont was court-martialed and imprisoned for five years in a federal military prison after he was convicted of sexually assaulting a young child. After being

1

released, Delimont reoffended and in 1995 pleaded no contest to four sexually violent offenses committed against underage children.

In 2014, shortly before Delimont's scheduled release from prison, the State successfully petitioned the district court to have Delimont civilly committed as a sexually violent predator (SVP) under the KSVPA. After the district court determined Delimont to be an SVP in 2015, we affirmed the district court's decision. *In re Care & Treatment of Delimont*, No. 114,495, 2016 WL 3366001 (Kan. App. 2016) (unpublished opinion).

Since then, Delimont has received annual review hearings that have all concluded he remained an SVP. Delimont unsuccessfully petitioned for an independent evaluation or transitional release in 2016, 2017, 2018, and 2023. This court affirmed each appeal from these determinations, except for the appeal from the 2017 decision that the district court dismissed. See *In re Care and Treatment of Delimont*, No. 126,768, 2024 WL 3634305, at *4 (Kan. App. 2024) (unpublished opinion) (affirming decision that Delimont failed to meet probable cause burden for transitional release on 2023 petition); *In re Care & Treatment of Delimont*, No. 120,242, 2019 WL 2237375, at *6 (Kan. App. 2019) (unpublished opinion) (finding no abuse of discretion in denial of independent examination on 2018 petition); *In re Care & Treatment of Delimont*, No. 117,706, 2017 WL 5951523, at *2 (Kan. App. 2017) (unpublished opinion) (affirming denial of 2016 petition based on unpreserved constitutional claims).

Kansas Department for Aging and Disability Services (KDADS) completed Delimont's most recent annual examination in 2024, cataloging his progress from March 2023 to February 2024. The report concluded that Delimont remained an SVP and that his condition has not so sufficiently changed that it would be safe for him to be placed in transitional release, "as it is likely he may engage in repeat[ed] acts of sexual violence if placement was to occur at this time."

The report explained that Delimont resisted treatment at the beginning of the review period but began attending classes consistently sometime in the third quarter of 2023. Delimont completed six classes with zero unexcused absences during the remainder of the review period. His participation was typically positive and proactive but sometimes he derailed the class and group by expressing negative feelings toward the Sexual Predator Treatment Program (SPTP) policies and administration. Delimont inconsistently submitted rational self-analysis and fantasy logs during the first half of the review period, but his submissions "improved significantly" during the last two quarters. Yet Delimont had not submitted a Relapse Prevention Plan as of the annual examination. He last submitted a victim polygraph examination in 2019, during which he received a significant reaction. No psychiatric medications were prescribed for him. Delimont also began working as an environmental services worker in June 2023.

KDADS performed several actuarial tests as part of the annual review. On the Static-99R assessment, which is used to estimate the probability that a convicted adult male sex offender will reoffend against a child or nonconsenting adult, Delimont's score of "'+1'" placed him in the "'Average risk'" category. In his first annual review in 2016, Delimont scored a "'+2'" on this assessment, placing him in the "Low-Moderate Risk" category. Delimont's score every other prior year on the Static-99R has placed him in the average risk category.

On the STABLE-2007 test—which assesses change in a detainee's intermediate-term risk status, assesses treatment needs, and helps predict recidivism—Delimont scored an 8 out of a possible 26 points, placing him in the "low moderate" level of criminogenic needs and the 61.3rd percentile. Since KDADS began using the STABLE-2007 test in 2020, Delimont's score has been between 12-13, placing him in the "High Treatment Needs" category. From 2016 to 2019, KDADS used a different test called the SOTIPS, on which Delimont's score ranged between 11 and 17, which all placed him consistently in the "'Moderate Needs'" level.

3

On the ACUTE-2007 test, which was developed to assess recent risk-relevant behavior for sexual offenders in community settings, Delimont scored "within the expected range for adult males at assessment in the instrument's standardization sample in the Static-99R/STABLE-2007 Standardized Risk Profile of 'Average'." Combining the results on these tests placed Delimont in the "Level III" or "'Average'" risk profile, meaning he is "expected to have roughly the same rate of recidivism compared to the average individual convicted of a sexually motivated offense." Compared to previous years, Delimont's combined results have improved from a "'High'" risk profile in 2020 and 2021, to an "'Above Average'" risk profile in 2023. Before 2020, Delimont's combined score on the actuarial tests showed improvement from "Moderate-High" in 2016, to "Moderate-Low" in 2017, then to "Low" in 2018 and 2019.

Delimont also completed psychological testing using the MoCA-BLIND, which is a rapid screening instrument to detect mild cognitive dysfunction, scoring 16 out of a possible 22 points indicating possible impairment in cognitive functioning.

After receiving his notice of annual review, Delimont petitioned the district court to both appoint an independent examiner and conduct a probable cause determination to determine whether his mental abnormality or personality disorder had significantly changed enough that he was safe to be placed in transitional release.

The district court held a review hearing, which Delimont observed by video conference. Delimont's counsel requested to have Delimont testify, pointing out the difficulty of meeting the probable cause burden based solely on the annual report. The court noted counsel's objection and declined to allow Delimont to testify.

Following arguments by counsel, the court denied Delimont's petition. Although the court found "improvement" on Delimont's part over the last half of the reporting period, "he has not completed the required testing and has inconsistently submitted his

4

Rational Self Analysis reports and Fantasy Logs, although his submissions have improved as of late, and does not have an approved relapse prevention plan." Thus, the court found Delimont failed to show good cause to appoint an independent examiner or probable cause to believe that his mental abnormality or personality disorder had changed significantly to permit transitional release.

Delimont timely appealed.

ANALYSIS

I.    DELIMONT HAS ABANDONED ANY CLAIM OF ERROR RELATED TO THE DISTRICT
      COURT'S REFUSAL TO ALLOW HIM TO TESTIFY AT HIS PROBABLE CAUSE HEARING
      FOR TRANSITIONAL RELEASE

Delimont carries forward his objection about being denied the ability to testify on his own behalf at the probable cause hearing for transitional release. The State does not address this claim. Some context is necessary.

After the filing of the annual report at issue here, Delimont filed a petition for the court to appoint an independent expert to examine him pursuant to K.S.A. 59-29a08 and requested the court release him into the transitional release program. One hearing was held to address both claims.

Under the KSVPA, to challenge the annual review, it was Delimont's burden to prove that there was probable cause to believe that his mental abnormality or personality disorder had significantly changed so that he was safe to be placed on transitional release. If a person does not participate in their prescribed treatment plan, there is a presumption that there is no probable cause to justify release. K.S.A. 2024 Supp. 59-29a08(d). The person can have an attorney represent them at the probable cause hearing, but the person is not entitled to be present. K.S.A. 2024 Supp. 59-29a08(e). If probable cause is

5

established, then the court has a separate hearing related to transitional release. At that hearing, the person has a right to be present and the right to have experts appointed on their behalf, and the burden of proof shifts to the State. K.S.A. 2024 Supp. 59-29a08(g).

At the probable cause hearing, Delimont appeared by Zoom and with his attorney. Counsel asked that his client be allowed to testify. The State did not object to Delimont's presence at the hearing but objected to him providing any testimony. It argued that there was no right for him to be present at the probable cause hearing, so there could be no right for him to testify at the probable cause hearing. The State argued that he could only testify at the transitional release hearing once probable cause had been established. The trial court agreed and denied Delimont the ability to present any testimony. Counsel pushed back:

"[COUNSEL FOR DELIMONT]: I understand that, Your Honor. However, with the burden of proof being on Mr. Delimont, it's rather difficult to prove anything other than just having the report in front of the Court, which is all that Your Honor's going to be seeing, I guess, under the statute, which I think is inappropriate.

"THE COURT: Your objection is noted for the record but overruled at this time."

So the basis for his argument was that it was difficult to meet his burden of proof without being allowed the opportunity to testify. After reviewing the annual report, which did include many statements from Delimont regarding his compliance with program requirements, hearing statements of counsel, and examining the statutes, the district court found that there was no probable cause to believe his condition had significantly changed and also denied his request for an independent examiner.

On appeal, Delimont only claims in passing that the refusal to allow his testimony made it difficult for him to meet his burden of proof. He makes no other claim of error.

Failing to support a point with pertinent authority is like failing to brief the issue, and we must deem any such arguments waived or abandoned. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

II.     DELIMONT FAILS TO MEET HIS BURDEN OF PROOF TO SHOW PROBABLE CAUSE THAT HE SHOULD BE CONSIDERED FOR TRANSITIONAL RELEASE

Delimont challenges the district court's finding that he did not meet his burden to show probable cause that his mental abnormality or personality disorder had changed so much that it would be safe to place him on transitional release.

Appellate courts review a district court's probable cause determination under the KSVPA using a de novo standard of review. *In re Care & Treatment of Burch*, 296 Kan. 215, 223, 291 P.3d 78 (2012). Because he bore the burden of proof at the annual review hearing, this court must consider the evidence in the light most favorable to Delimont, drawing inferences and resolving conflicting evidence in his favor when reviewing a probable-cause determination. *Burch*, 296 Kan. 215, Syl. ¶ 9; see K.S.A. 2024 Supp. 59-29a08(d). To meet his burden, Delimont needed to show facts "sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that [his or her] mental abnormality or personality disorder had so changed that [he or she] was safe to be placed in transitional release." 296 Kan. at 226.

Delimont points out several facts from the record that are favorable to his position, including that he participated in his two most recent annual reviews. While he is still on Tier One, he has not been on IPMP status for the last three years and has progressed from resisting treatment to regularly attending mainstream programming classes. Delimont also highlights his consistent participation in groups, classes, and individual sessions, which he asserts showed he was listening and processing the relevant information.

7

Delimont took full responsibility for his actions and apologized, noting that he "'will pay for it the rest of [his] life.'"

Delimont also was not currently prescribed any psychiatric medications and has maintained employment as an environmental services worker since June 2023. Delimont further notes that his actuarial test scores improved from 2023 to 2024, decreasing from 13 to 8—out of a possible 26 points—on the STABLE-2007 assessment. Lastly, he emphasizes that his diagnoses of major depressive disorder and alcohol use disorder were removed during the 2024 annual examination.

Delimont denied having any emotional connection to children or thoughts about minors in general. He further denied having any sexual thoughts in general. He indicated that due to some medical issues he was impotent. He said he had not had any sexual thoughts in years. When discussing the high-risk situations for him, Delimont told the interviewer, "'I don't know anymore. It used to be being alone with a child, thinking about it, or creating an opportunity environment.'" When asked how he would manage those risks, Delimont stated:

> "'First of all, I don't think about it. I will never be alone with a child again, ever. I will never try to create an environment where I would be. The people who I will choose to associate with will know all about my past. I will tell them, not this program.'"

As for his plans for the coming year, Delimont said he would "'continue what I am doing right now. Continue going to classes, continue working if possible. Getting out of this program, moving up if possible.'"

Despite these favorable facts, Delimont remains on Tier One of the SPTP despite his marked improvement in the last half of the reporting period, in part because of his failure to complete a Relapse Prevention Plan and polygraph testing that is required to

8

advance to Tier Two. At one point he stated he was "'contemplating'" doing a fourth relapse prevention plan, but he was tired of doing them and did not believe in them. Staff reminded him that the Relapse Prevention Plan is a living document and must be updated throughout treatment.

Tier One of the SPTP is focused on "Skill Acquisition," meaning "the acquisition of skills necessary to allow him to safely function in more challenging, open society environments, as well as encouraging him to address the individual issues which contributed to his placement at SPTP." The "general expectations" for advancing to Tier Two would require "[a]t a minimum" that Delimont complete a therapist approved relapse prevention plan and complete two consecutive polygraphs with no significant disclosures and no significant reactions with the past 12 months. If a person does not participate in their prescribed treatment plan, there is a presumption that there is no probable cause to justify transitional release. K.S.A. 2024 Supp. 59-29a08(d).

Second, and more importantly, while Delimont is correct that two of his mental diagnoses were removed, the report explains that the removal occurred due to a prior misdiagnosis, not because of his participation in treatment for these disorders. The actuarial risk assessment section of the report explained that Delimont's mood symptoms of anger and chronic irritability were more closely associated with his borderline personality disorder diagnosis as opposed to a major depressive disorder diagnosis, so the latter would be removed. The report also explained that Delimont's alcohol use disorder diagnosis would be removed based on the currently available information, which consisted of Delimont's responses during the examination that he was never punished for using alcohol while in the military, he would have "[m]aybe six or seven" drinks on weekends with his friends at that time, and that he had not consumed alcohol in over 30 years. Delimont's other diagnoses—pedophilic disorder, sexually attracted to males, nonexclusive type; and borderline personality disorder with antisocial features—

9

remained. Put simply, Delimont offers nothing to show any change to these aspects of his mental abnormality or personality disorder.

Third, while there has indeed been progress based on his willingness to begin participating in some aspects of the program based on his improved actuarial test scores, some of Delimont's statements during the interview portion of his annual review nonetheless show he continues to believe the treatment is unnecessary and merely punitive. He explained that failing to take a polygraph prevents progressing in the SPTP, which he believed was "not treatment, it is punitive." He stated he believed that he should determine which classes are good for him. He claimed it was impossible to go to five classes, with some being back-to-back. He simply could not process all that material. He only wants to take two classes and group therapy.

We first note that merely expressing dissatisfaction with the program and frustration about being there is not enough to keep someone in the program. Delimont is now 73 years old and has been either in prison or the SPTP for around 30 years. Frustration would be normal. But when viewing the facts in the light most favorable to Delimont, a person of ordinary prudence would not reasonably believe that his mental abnormality or personality disorder has so changed so that he should be placed in transitional release. As the district court concluded, Delimont has made some progress by engaging in the treatment program, but more is needed to show probable cause that he should be placed in transitional release.

Affirmed.